## Case No. 16,618a.

### UNITED STATES v. The VERMONT.

[MS.]

District Court, D. Connecticut.[1]

SHIPPING — SALE OF LICENSED COASTING-VESSEL TO FOREIGNER—FORFEITURE.

[The sale of a licensed schooner to a British subject, followed by an order to the master to make delivery to him, and the presentation of a request for clearance by the captain, which recites the sale, and is signed and sealed by the British consul, though the delivery is not yet actually made, is a "transfer," within the meaning of Act Feb. 18, 1793 (1 Stat. 305), for licensing coasting vessels, which provides that any licensed vessel transferred to a person not a citizen of, and resident within, the United States shall not be forfeited.]

This was a libel in rem by the United States against the schooner Vermont for violation of the act of February 18, 1793, for licensing vessels in the coasting trade.

SHIPMAN, District Judge. This libel of information is founded on section 32 of the act of congress, approved February 18, 1793, which provides, among other things, "that if any licensed ship or vessel shall be transferred in whole or in part, to any person who is not at the time of such transfer, a citizen of and resident within the United States, * * * every such ship or vessel, with her tackle, apparel and furniture, and the cargo found on board of her, shall be forfeited." The present proceeding is instituted by the United States for the condemnation of the schooner Vermont, her tackle, apparel, and furniture. There is no claim on the part of the government that she had any cargo on board at the time of the alleged transfer or at the time of her seizure. The vessel was seized on the 14th of August, 1861, in the Thames river, within the admiralty jurisdiction of this court, by Edward Prentiss, Esq., collector of the port of New London. Since the filing of the libel, Gilbert Potter, Jr., filed his claim, alleging that he is the owner, and

for answer denies the allegations of the libel. The facts, as they appear in the proof, are briefly these: This schooner appears to have been formerly owned by Edward Kidder and Wm. H. Willand of Wilmington, N. C., and was registered at that port. On the 4th of May, 1861, Kidder and Willand sold her to Gilbert Potter, Jr., of New York. The bill of sale was presented for record at the New York customhouse on the 31st day of July, 1861, the old register canceled, and a new enrollment and license issued to Potter; he having taken the usual oath that he was sole owner. From the facts proved, it is clear that, soon after the 31st of July, and before the seizure, the Vermont was sold by Potter to N. R. Clements, of Yarmouth, in the province of Nova Scotia, but it is claimed by the vendor that she was never delivered, and that no "transfer", within the meaning of the act of 1793, took place. It appears that Henry Fargo was, at the time of the sale, and for many months previous had been, master of the Vermont, and he swears that Potter sold her to Clements, and that he was to paint her, and deliver to the latter at Halifax. He also says that he received a letter from Clements, directing him to have her painted. This letter was received by him some time before the seizure, while he was at Norwich, in this state, where he had taken the vessel. The letter also directed Fargo to have her name changed to the "Annie," and stated that a British flag would be procured for her. A few days after Capt. Fargo presented the paper marked "C" at the customhouse at New London, and requested a clearance of the vessel. This paper recites the fact of the sale to Clements, a British subject, the change of the name of the vessel, and is signed by the British consul for Massachusetts and Rhode Island. It is dated the 6th of August, 1861, and has the consular seal attached. It appears that Capt. Fargo acted as the agent both of Potter and Clements, and, in the absence of any explanation from either of them, it is fair to presume that he acted with the knowledge and consent of both, and that they both consented to the presentation of the consular paper, which treated the sale as complete and unconditional.

I think it entirely immaterial whether there was a formal delivery of the vessel to Clements in person or not. I think that enough appears, in view of the silence of Clements and Potter, to warrant the inference that the vessel was regarded by both as the property of the former, and that the title and control of the vessel had passed to him. But, upon the settled principles of law, the title of a specific chattel passes without delivery, certainly as between the parties to the contract, where the sale is unconditional.

A decree of condemnation of the vessel, her tackle, apparel, and furniture, must therefore be entered.

---

[1] [Date not given.]